IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

ELIZABETH WEBER,                    §
                                    §
          Plaintiff,                §
                                    §
v.                                  §          CIVIL NO. H-07-2127
                                    §
MICHAEL J. ASTRUE,                  §
COMMISSIONER OF THE SOCIAL          §
SECURITY ADMINISTRATION,            §
                                    §
          Defendant.                §


**MEMORANDUM OPINION**

Pending before the court[1] are Plaintiff's Motion for Summary Judgment (Docket Entry No. 14) and Defendant's Cross Motion for Summary Judgment (Docket Entry No. 13).  The court has considered the motions, all relevant filings, the administrative record, and the applicable law.  For the reasons set forth below, Plaintiff's motion for summary judgment is **DENIED** and Defendant's motion for summary judgment is **GRANTED**.

## I. Case Background

Elizabeth Weber ("Plaintiff") filed this action pursuant to 42 U.S.C. § 405(g) and 1383(c)(3) for judicial review of an unfavorable decision by the Commissioner of the Social Security Administration ("Commissioner") regarding Plaintiff's claim for disability benefits under Title II and Title XVI of the Social Security Act, 42 U.S.C. § 1382.

---

[1]     The parties consented to proceed before the undersigned magistrate judge for all proceedings, including trial and final judgement, pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73. Docket Entry Nos. 8, 11, and 12.

A. **Factual History**

Plaintiff was born on November 9, 1970, and was thirty-six years old on the date of the Administrative Law Judge's ("ALJ") decision regarding Plaintiff's alleged disability.[2]  Plaintiff completed high school by way of special education classes.[3] After high school, Plaintiff enrolled at North Harris County Community College and took two years of cosmetology classes.[4] Plaintiff was employed from February of 1988 until September of 2002.[5]  Her past employment includes work as a grocery sacker, grocery stocker, teacher's aide, and house cleaner.[6]

In July of 2000, Plaintiff underwent a psychological evaluation and was diagnosed with borderline intellectual functioning.[7]  She was found to have a verbal IQ score of 70, a performance IQ score of 82, and a full scale IQ score of 74.[8] Her academic achievement was noted to range from moderately to severely deficient.[9]

In a mental retardation evaluation in May of 2005, Plaintiff earned a verbal IQ score of 61, performance score of 70, and a

---

[2]     Transcript of the Administrative Proceedings ("Tr.") 85.

[3]     Tr. 101.

[4]     Tr. 342.

[5]     _Id._

[6]     Tr. 96.

[7]     Tr. 151.

[8]     _Id._

[9]     Tr. 285.

full scale IQ score of 63.[10]  The examining physicians noted the absence of any documentation of mental retardation prior to the age of eighteen.[11]  They also noted that Plaintiff's functional limitations were more in line with borderline intellectual functioning rather than mental retardation.[12]  Although it was recommended that Plaintiff be eligible for admission to Texas's Mental Retardation Services as a person with Pervasive Developmental Disorder, the physicians concluded that Plaintiff was not mentally retarded.[13]

Plaintiff's medical records were evaluated by Dr. Ashok Kushalani, a psychiatrist, in July of 2006.[14]  Dr. Kushalani concluded that none of Plaintiff's impairments met or equaled any impairment as described in the Listings.[15]  He also noted "no history of any severe maladaptive behaviors or hospitalizations."[16]  Dr. Kushalani indicated that the medical evidence supported Plaintiff's medical problems, but not mental retardation.[17]

---

[10]    Tr. 260.

[11]    Id.

[12]    Id.

[13]    Tr. 262.

[14]    Tr. 296.

[15]    Id.  A "Listing" refers to an impairment listed in Appendix 1 of the Social Security Act Regulations. 20 C.F.R. pt. 404, subpt. P, app. 1. Specifically, the mental retardation listing is found at section 12.05 of Appendix 1.

[16]    Id.

[17]    Tr. 298.

The most recent mental status examination in Plaintiff's records took place on September 13, 2006.[18]  Plaintiff earned the following IQ scores: verbal 64, performance 69, and a full scale score of 63.[19]  Plaintiff was categorized as having a mild level of mental retardation.[20]  The examiner also found that Plaintiff had adequate memory and judgment and showed no symptoms of a mental or emotional disorder.[21]

Plaintiff's medical records also show a history of diabetes mellitus, carpel tunnel syndrome, hypothyroidism, and back pain (associated with scoliosis).  A medical report in 2003 showed no evidence of scoliosis, but in November of 2006, Plaintiff testified that her scoliosis had become worse and her doctors were discussing the possibility of surgery.[22]  A medical exam in March of 2004 indicated the following regarding Plaintiff's physical health: (1) Plaintiff's diabetes was adequately controlled with medication; (2) Plaintiff's carpal tunnel syndrome was mild; and (3) Plaintiff's back pain was associated with minimal degenerative changes shown on her x-rays.[23]  In a Functional Capacity Assessment at about the same time, two

---

[18]    Tr. 306-09.

[19]    Tr. 307-08.

[20]    Tr. 309.

[21]    Tr. 307.

[22]    Tr. 220, 408-09.

[23]    Tr. 178.

4

different medical consultants reported that Plaintiff's alleged limitations resulting from her diabetes, carpel tunnel syndrome, and back pain were not supported by the medical evidence or other evidence of record.[24]

## B. **Procedural History**

Plaintiff filed for disability benefits on October 29, 2003, claiming a disability beginning October 11, 2002, due to mental retardation, carpel tunnel syndrome, diabetes, and back problems.[25]  In her application, Plaintiff stated that her slow learning capabilities and low level of comprehension limited what she was able to do.[26]

After her application was denied both initially and upon reconsideration, Plaintiff requested a hearing before an ALJ of the Social Security Administration.[27]  A hearing was held on June 2, 2006, and a supplemental hearing was held on November, 6, 2006.[28]  During the hearings, testimony was solicited from Plaintiff and a medical expert, among others.

Plaintiff testified that she suffers from numbness in her hands, legs, and feet.[29]  She stated that her level of pain was

---

[24]    Tr. 187, 192.

[25]    Tr. 85, 95.  Plaintiff addresses only mental retardation in her motion for summary judgment.

[26]    Tr. 107

[27]    Tr. 45.

[28]    Tr. 18, 371, 404.

[29]    Tr. 380-82.

excruciating on almost a daily basis.[30]   She also testified to having diabetes, scoliosis, carpel tunnel syndrome, and problems with her eyes.[31]   She described her diabetes as "fair" and indicated that, the last time she visited the doctor, her glucose level was "close to normal."[32]   Plaintiff reported trouble climbing stairs, bending over, lifting, walking, and standing for more than five minutes.[33]

Beyond her physical problems, Plaintiff stated that she was able to read very little and that her spelling was poor.[34]   She drove her husband to and from work, which takes a total of forty-five minutes.[35]   She was able to do light work around the house such as vacuuming, laundry, washing dishes, and making beds.[36] Plaintiff was able to prepare simple meals for herself.[37]   She helped with the grocery shopping, but had trouble figuring out the proper change.[38]

Plaintiff also testified that she was fired from her

---

[30]   See Tr. 383.

[31]   Tr. 379-80.

[32]   Id.

[33]   Tr. 383, 386-88, 391.

[34]   Tr. 378.

[35]   Tr. 385.

[36]   Tr. 387-89.

[37]   Tr. 386.

[38]   Tr. 390.

housekeeping jobs because she was slow.[39]   While working as a child care assistant, Plaintiff was told that she did not clean the babies well and that she was not spending enough time playing with the children.[40]

Dr. Kushalani, the medical expert ("ME"), testified that Plaintiff has borderline intellectual functioning and medical problems such as hypothyroidism and diabetes.[41]   Despite these conditions, he concluded that Plaintiff did not meet or equal any of the severity requirements of any section of Listing 12.05 (Mental Retardation) or any other Listing.[42]

When asked about the variance in Plaintiff's IQ scores, the ME explained that fluctuations might be attributable to Plaintiff's hypothyroidism and diabetes.[43]   The ME hypothesized that fluctuations in the thyroid or glucose levels might affect cognitive activity; however, as soon as those levels came back to normal or controlled ranges, Plaintiff's performance levels would return.[44]   He indicated that it would be "largely conjecture" to speculate as to Plaintiff's IQ scores prior to age twenty-two.[45]

The ME also testified that an individual with low IQ scores,

---

[39]   Tr. 393.

[40]   Tr. 395-96.

[41]   Tr. 416.

[42]   Tr. 423.

[43]   Tr. 421-22.

[44]   Id.

[45]   Tr. 429.

such as Plaintiff, has the ability to adapt and function in society.[46]   According to the ME, Plaintiff can: understand, remember, and carry out short instructions with no limitations; understand, remember, and carry out detailed instructions with marked limitations; make judgment decisions on simple work-related issues with slight limitations; interact appropriately with the public and co-workers with slight limitations; interact with supervisors with no limitations; and respond to work pressure and changes in the work routine with slight limitations.[47]

The ALJ issued a written decision on December 27, 2006, denying Plaintiff's claim for disability benefits.[48]   The ALJ found that Plaintiff met the requirements for insured status on the alleged date of disability through at least December 31, 2004, and that Plaintiff had not engaged in substantial gainful activity during the relevant time period.[49]   The ALJ found that Plaintiff had the following severe impairments: scoliosis, lower back pain, diabetes mellitus, hypothyroidism, and borderline intellectual functioning.[50]   However, he determined that none of these met any of the Social Security Administration's listed

---

[46]   Tr. 422.

[47]   Tr. 423-24.

[48]   Tr. 18.

[49]   Tr. 20.
[50]   Id.

impairments.[51]

In reaching his decision on the listings, the ALJ considered medical and opinion evidence, specifically the testimony of Dr. Kushalani stating that Plaintiff's impairments did not meet or equal the severity requirements of any of the Listings.[52]  The ALJ found Dr. Kushalani's testimony credible and consistent with the objective evidence of record.[53]

In addition, the ALJ described evidence inconsistent with a diagnosis of mental retardation.[54]  He highlighted that Plaintiff had been diagnosed repeatedly with borderline intellectual functioning.[55]  The ALJ noted an absence of documentation to support that Plaintiff was mentally retarded prior to age eighteen.[56]  The ALJ also considered Plaintiff's history of diabetes mellitus and hypothyroidism, and the fact that both conditions have been successfully treated with medication.[57]  He considered Plaintiff's back pain, thoracic spine x-rays, and corresponding treatment.[58]  He noted: "If an impairment can be reasonably controlled by medication or treatment, it cannot serve

---

[51]     Id.

[52]     Tr. 21.

[53]     Id.

[54]     Tr. 20-21.

[55]     Id.

[56]     Tr. 21.

[57]     Tr. 20-21.

[58]     Tr. 21.

as a basis for a finding of disability."[59]

The ALJ found that Plaintiff retained a Residual Functional Capacity ("RFC") allowing her to: lift and carry up to twenty-five pounds frequently and fifty pounds occasionally; stand or walk for up to six hours in an eight-hour workday; and sit for up to six hours in an eight-hour workday.[60]  Using this RFC, the ALJ found Plaintiff both mentally and physically able to perform her previous work.[61]

The ALJ considered Plaintiff's subjective complaints and found that her "medically determinable impairments could reasonably be expected to produce the alleged symptoms, but that [her] statements concerning the intensity, persistence and limiting effects of these symptoms [were] not entirely credible."[62]  He discussed Plaintiff's ability to work around the house doing such activities as dusting, vacuuming, washing dishes, preparing simple meals, watching television, grocery shopping, and driving.[63]

Ultimately, the ALJ determined that Plaintiff was not under a disability, as defined by the Social Security Act, from October

---

[59]    Tr. 22.

[60]    Id.

[61]    Id.

[62]    Id.

[63]    Id.

11, 2002, through the date of his decision.[64]   On June 1, 2007,
the Appeals Council denied Plaintiff's request for review of the
ALJ's decision, thereby rendering the ALJ's decision the final
decision of the Commissioner.[65]   Consequently, Plaintiff filed
this action on June 29, 2007.[66]

## II. Standard of Review and Applicable Law

The court's review of a final decision by the Commissioner
to deny disability benefits is limited to two issues: 1) whether
proper legal standards were used to evaluate the evidence; and 2)
whether substantial record evidence supports the decision.
Waters v. Barnhart, 276 F.3d 716, 718 (5th Cir. 2002); Brown v.
Apfel, 192 F.3d 492, 496 (5th Cir. 1999).

The legal standard for determining disability under the Act
is whether the claimant is unable "to engage in any substantial
gainful activity by reason of any medically determinable physical
or mental impairment which . . . has lasted or can be expected to
last for a continuous period of not less than twelve months."  42
U.S.C. § 423(d)(1)(A).   To determine whether a claimant is
capable of performing any "substantial gainful activity," the
regulations provide that disability claims should be evaluated
according to the following sequential five-step process:

(1) a claimant who is working, engaging in a
substantial gainful activity, will not be found to be

---

[64]     Tr. 18.

[65]     Tr. 6.

[66]     Plaintiff's Complaint, Docket Entry No. 1.

11

disabled no matter what the medical findings are; (2) a claimant will not be found to be disabled unless he has a "severe impairment;" (3) a claimant whose impairment meets or is equivalent to an impairment listed in [20 C.F.R. Pt. 404, Subpt. P, App. 1] will be considered disabled without the need to consider vocational factors; (4) a claimant who is capable of performing work that he has done in the past must be found "not disabled;" and (5) if the claimant is unable to perform his previous work as a result of his impairment, then factors such as his age, education, past work experience, and RFC must be considered to determine whether he can do other work.

Bowling v. Shalala, 36 F.3d 431, 435 (5th Cir. 1994).

The widely accepted definition of "substantial evidence" is "something more than a scintilla but less than a preponderance." Carey v. Apfel, 230 F.3d 131, 135 (5th Cir. 2000); Brown, 192 F.3d at 496. In applying this standard, the court is to review the entire record, but may not re-weigh the evidence, decide the issues de novo, or substitute its judgment for the Commissioner's judgment. Brown, 192 F.3d at 496. The Commissioner is given the responsibility of deciding any conflicts in the evidence. Id.; see also 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . ."). Only if no credible evidentiary choices of medical findings exist to support the Commissioner's decision should the court overturn it. Johnson v. Bowen, 864 F.2d 340, 343-44 (5th Cir. 1988). In other words, the court is to defer to the decision of the Commissioner as much as is possible without making the court's review meaningless. Brown, 192 F.3d at 496.

12

To be entitled to benefits, a claimant bears the burden of proving he is disabled within the meaning of the Act. <u>Wren v. Sullivan</u>, 925 F.2d 123, 125 (5th Cir. 1991). By judicial practice, this translates into the claimant bearing the burden of proof on the first four of the above steps, and the Commissioner bearing it on the fifth. <u>Brown</u>, 192 F.3d at 498; <u>Greenspan v. Shalala</u>, 38 F.3d 232, 236 (5th Cir. 1994). The analysis stops at any point in the five-step process upon a finding that the claimant is or is not disabled. <u>Greenspan</u>, 38 F.3d at 236.

### III. Analysis

#### A. Plaintiff's Motion

Plaintiff asserts that the ALJ applied an improper legal standard in his evaluation of this case and that his decision regarding Plaintiff's impairments was not supported by substantial evidence. Specifically, Plaintiff argues that: (1) "to the extent the ALJ has required a formal diagnosis of mental retardation, the Commissioner has mis-construed the legal standard vis-a-vis Listing 12.05 C;"[67] and (2) the ALJ erred in finding that Plaintiff's impairments did not meet or equal the requirements of Listing 12.05 (Mental Retardation) under subpart C.

Plaintiff bears the burden of proving she meets a Listing at step three of the analysis process. Listing 12.05 directs a

---

[67]     Plaintiff's Motion for Summary Judgment, Docket Entry No. 14, p. 10.

presumptive finding of disability if Plaintiff has:

Mental Retardation: Mental retardation refers to significant subaverage general intellectual function with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.

The required level of severity for this disorder is met when the requirements in A,B,C, or D are satisfied.

A. Mental Incapacity evidenced by dependence upon others for personal needs (e.g., toileting, eating, dressing, or bathing) and inability to follow directions, such that the use of standardized measures of intellectual functioning is precluded; or

B. A valid verbal, performance, or full scale IQ of 59 or less; or

C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing additional and significant work-related limitation of function; or

D. A valid verbal, performance, or full scale IQ of 60 through 70, resulting in at least two of the following:

1. Marked restriction of activities of daily living; or

2. Marked difficulties in maintaining social functioning; or

3. Marked difficulties in maintaining con-centration, persistence, or pace; or

4. Repeated episodes of decompensation, each of extended duration.

20 C.F.R. pt. 404, subpt. P, app. 1, § 12.05.

"For a claimant to show that his impairment matches a listing, it must meet all of the specified medical criteria.  An

impairment that manifests only some of those criteria, no matter how severely, does not qualify." <u>Sullivan v. Zebley</u>, 493 U.S. 521, 530 (1990).   The ALJ is responsible for making the determination as to whether a severe impairment meets or equals a Listing. Soc. Sec. Ruling ("SSR") 96-6P, 1996 SSR LEXIS 3, 7-8.   The Listing for mental retardation is met when the Plaintiff's impairment meets both the diagnostic description in introductory paragraph in conjunction with any of the four sets of criteria that follow in the Listing. 20 C.F.R. pt. 404, subpt. P, app. 1.   Hence, in order to meet Listing 12.05, evidence must demonstrate the onset of a mental retardation impairment before the Plaintiff reached the age of twenty-two.

Plaintiff first argues that, to the extent the ALJ has required a formal diagnosis of mental retardation, Listing 12.05C has been misconstrued.   The court finds Plaintiff's arguments on this issue unpersuasive.   Plaintiff fails to point to, and the court cannot find, any language in the ALJ's opinion demonstrating that he required a formal diagnosis of "mental retardation" in order to find that Plaintiff met Listing 12.05. The ALJ considered Plaintiff's diagnosis of borderline intellectual functioning and the lack of "documentation to <u>support</u> that [Plaintiff] was mentally retarded."[68]   Neither of these considerations indicates that the ALJ required a formal diagnosis of "mental retardation."

---

[68]     Tr. 21 (emphasis added).

Next, Plaintiff argues that the ALJ erred in finding that her impairments did not meet or equal the requirements of Listing 12.05.   She asserts that her impairments meet Listing 12.05 under subpart C.   To meet Listing 12.05, Plaintiff must first make a threshold showing of deficits in adaptive functioning manifested prior to the age of twenty-two. Plaintiff appears to assert that the ALJ's decision on this issue was not supported by substantial evidence and that the ALJ improperly gave more weight to the opinion of a medical professional than the testimony of Plaintiff and Plaintiff's mother-in-law.   The court will not address Plaintiff's arguments regarding adaptive deficits any further in this opinion because, even if Plaintiff was found to have adaptive deficits prior to age twenty-two, Plaintiff still fails to meet Listing 12.05C.

In addition to showing deficits in adaptive functioning, to meet Listing 12.05C, Plaintiff must show that she has: (A) a valid verbal, performance, or full scale IQ of sixty through seventy; and (B) a physical or other mental impairment imposing additional and significant work-related limitation of function.[69]

Assuming Plaintiff falls under the requisite IQ scores for

---

[69]     Plaintiff cites to a case from the Southern District of New York and argues that, to meet the criteria under Listing 12.05(C) (physical or other mental impairment imposing an additional and significant work-related limitation of function), an impairment need only be severe within the meaning of step two of the sequential evaluation process.   In other words, Plaintiff maintains that the ALJ's finding of severe limitations at step two also constitutes a finding of significant work-related limitations.   The court finds Plaintiff's arguments unavailing because Plaintiff has failed to support its legal standard argument with controlling, or even persuasive, caselaw.

Listing 12.05C, substantial evidence supports a finding that she does not have the requisite work-related limitation.  The court recognizes that Plaintiff has some physical limitations, but Plaintiff has not met her burden to show that her physical limitations pose additional <u>and</u> significant work-related limitations.  The ALJ's determination on this issue is supported by Plaintiff's testimony and medical records, as well as the ME's testimony.

In his decision, the ALJ noted that Plaintiff has been treated successfully with medication for her physical impairments (hypothyroidism, diabetes, and back pain).[70]  Her impairments may have been considered significant if they had not been responsive to medication.  However, any impairment that can be reasonably controlled by medication cannot be considered as an impairment for the purpose of establishing disability.[71]  <u>Lovelace v. Bowen</u>, 813 F.2d 55, 59 (5th Cir. 1987).

In a Functional Capacity Assessment in 2004, two different medical consultants reported that Plaintiff's alleged limitations resulting from her diabetes, carpel tunnel syndrome, and back pain were not supported by the medical evidence or other evidence of record.[72]  Moreover, a medical report in 2003 showed no evidence of scoliosis.  Although Plaintiff testified

---

[70]   Tr. 21.

[71]   Tr. 22.

[72]   Tr. 187, 192.

that, in 2006, her doctors discussed surgery for scoliosis, no medical records support her testimony. The court finds it significant that Plaintiff's daily activities included driving her husband to and from work, grocery shopping, vacuuming, washing dishes, making beds, doing laundry, and preparing simple meals. Each of these required physical activity on the part of Plaintiff.

The ME testified that Plaintiff's medical record does not support a finding that Plaintiff's condition meets or equals a Listing.[73] He indicated that Plaintiff has "some limitations, but they don't come to the extent that they would meet a listing."[74] Plaintiff was noted to have the ability to adapt and function in society.[75] According to the ME, Plaintiff could: understand and remember short instructions with little or no limitations; carry out simple instruction with no limitations; understand and carry out detailed instructions with marked limitations; make judgment decisions on work-related issues with slight limitations; interact with the public and co-workers with slight limitations; respond to changes in work routine and setting with slight limitations; and has no limitations while interacting with supervisors.[76]

---

[73]   Tr. 423.

[74]   Id.

[75]   Tr. 422.

[76]   Tr. 423-24.

Accordingly, the court finds more than a scintilla of evidence to support a finding that Plaintiff does not meet Listing 12.05.

### B. Defendant's Motion

Defendant contends that the ALJ's decision should be affirmed because he properly determined that Plaintiff did not meet a listing. Finding no legal error in the ALJ's decision, the court should not alter the ALJ's decision if substantial record evidence supports his finding that Plaintiff was not disabled.

The court must review the record cautiously and determine only whether the ALJ's decision is supported by more than a scintilla of evidence. <u>See</u> <u>Carey</u>, 230 F.3d at 135. The court finds there is more than a scintilla of evidence in support of the ALJ's decision. Therefore, the court cannot overturn the decision of the ALJ, who is given the task of weighing the facts and evidence and deciding disputes. <u>See</u> <u>Chambliss v. Massanari</u>, 269 F.3d 520, 522 (5th Cir. 2001); <u>Carrier v. Sullivan</u>, 944 F.2d 243, 247 (5th Cir. 1991).

### IV. Conclusion

For all of the foregoing reasons, the court **DENIES** Plaintiff's motion for summary judgment and **GRANTS** Defendant's motion for summary judgment.

SIGNED at Houston, Texas, this 31st day of July, 2008.

Nancy K. Johnson
United States Magistrate Judge